Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| *ADA I. CARMONA RIVERA*<br><br>*Recurrente*<br><br>v.<br><br>JUNTA DE DIRECTORES Y/O CONSEJO DE TITULARES DEL COND. LA ARBOLEDA REPRESENTADO POR SU PRESIDENTA MAYRA GASCOT<br><br>*Recurrido* | KLRA202400519 | Revisión Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2023-0014691<br><br>Sobre: Condominio (Ley. Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

Comparece ante nos Ada Inés Carmona Rivera (señora Carmona Rivera o recurrente), mediante *Recurso de Apelación*[1] y nos solicita la revocación de la *Resolución Sumaria* emitida el 14 de julio de 2024, notificada el 18 de julio de 2024, por el Departamento de Asuntos del Consumidor (DACo)[2]. Mediante el referido dictamen, el DACo determinó el cierre y el archivo de la *Querella*[3] presentada por la recurrente, bajo el fundamento de que la controversia se había tornado académica.

Por los fundamentos que exponemos a continuación, **confirmamos** la determinación recurrida.

**I.**

Según surge del expediente ante nos, el 29 de marzo de 2023, la señora Carmona Rivera presentó una *Querella* ante el DACo

---

[1] Aunque la parte recurrente intituló el presente caso como *Recurso de Apelación*, hacemos énfasis que el título correcto para este tipo de recurso, en derecho, sería una *Revisión Administrativa*.
[2] Véase Apéndice 1 del Recurso de Apelación, págs. 1-6.
[3] Véase Apéndice 3 del Recurso de Apelación, págs. 15-16.

Número Identificador

SEN2024_____

contra el Consejo de Titulares del Condominio La Arboleda, representado por su presidenta, Mayra Gascot, así como también contra la Junta de Directores (Consejo de Titulares del Condominio La Arboleda o recurrido). En la *Querella*, la recurrente impugnó los acuerdos de la Asamblea Ordinaria llevada a cabo el 23 de marzo de 2023. Específicamente, objetó la ratificación de la extensión del contrato de administración con la compañía Total Administration Inc.[4], alegando que la ratificación se realizó sobre una licencia vencida de la empresa y de forma ilegal.

A esos efectos, el 24 de junio de 2023, el Consejo de Titulares del Condominio La Arboleda presentó su *Contestación a Querella*[5], en la cual admitieron que el 23 de marzo de 2023 se celebró una Asamblea para ratificar la extensión del contrato de la administración. De igual forma, alegaron que: (1) la licencia de Total Administration Inc. y Mayra Bezares Gómez estaba vigente desde el 1 de diciembre de 2022 hasta el 1 de diciembre de 2024[6]; (2) que la licencia de Marisol Santana era válida desde el 30 de junio de 2021 hasta el 30 de junio de 2023, por lo cual, a la fecha de la asamblea, la licencia estaba vigente[7] y, (3) que Marisol Santana solicitó la renovación de su licencia el 23 de junio de 2023[8].

Así las cosas, el 1 de abril de 2024, la señora Carmona Rivera presentó una *Moción de Solicitud de Resolución Sumaria de Querella*[9]. En dicha moción, la recurrente alegó que las acciones del recurrido en la Asamblea del 23 de marzo de 2023 debían ser anuladas por ser contrarias a la ley. Esto, debido a que no se brindó

---

[4] Al momento de la presentación de la *Querella*, la compañía administradora del Condominio La Arboleda, lo era Total Administration Inc. Véase Apéndice 1 del Recurso de Apelación, pág 3.
[5] Véase Apéndice 4 del Recurso de Apelación, págs. 28-30.
[6] Véase Apéndice 4 del Recurso de Apelación, págs. 29 y 32.
[7] Véase Apéndice 4 del Recurso de Apelación, págs. 29 y 31.
[8] Véase Apéndice 4 del Recurso de Apelación, págs. 33 y 34.
[9] Véase Apéndice 5 del Recurso de Apelación, págs. 35 y 49.

la oportunidad de escoger al agente administrador, sino que se impuso la ratificación de un contrato vencido.

Evaluada la petición de la señora Carmona Rivera, el 14 de julio de 2024[10], el DACo emitió una *Resolución Sumaria*[11], donde ordenó el cierre y archivo de la querella presentada por la recurrente. El DACo aplicó la doctrina de academicidad, pues la compañía Total Administration Inc. había cesado de brindar servicios al Condominio La Arboleda.

En vista de lo anterior, el 6 de agosto de 2024, la recurrente presentó una *Moción de Reconsideración*[12] ante el DACo. En ella, la señora Carmona Rivera solicitó que se reevaluara la controversia debido al incumplimiento del recurrido y que se debían tomar en cuenta las excepciones de la doctrina de academicidad, pues la controversia era susceptible de repetirse. Así pues, sin que el DACo haya emitido pronunciamiento en cuanto a dicha moción, el 20 de septiembre de 2024, la señora Carmona Rivera acudió ante nos mediante *Recurso de Apelación* y le imputó al DACo la comisión de lo siguientes errores:

> **Primer Error:** La controversia fue declarada académica de manera incorrecta tras la renuncia de Total Administration Inc., sin que se tomaran en cuenta las excepciones aplicables a la doctrina de academicidad. La situación es susceptible de repetirse y existen consecuencias colaterales que continúan afectando a los titulares del condominio.

> **Segundo Error:** El DACo no atendió ni evaluó las alegaciones contra la Junta y el Consejo de Titulares, ya que, **ratificaron** un contrato de administración con *Total Administration Inc.*, pese a que la licencia estaba vencida y que la acción de ratificar no est[á] contemplada en la Ley 129-2020. Esto representa una violación a la Ley de Condominios 129-2020 al no ofrecerse otras opciones de administración y no permitir una elección adecuada por parte de los titulares. Por tanto, erró el DACo al desestimar la Querella.

El 25 de septiembre de 2024[13], emitimos una *Resolución* mediante la cual le concedimos al recurrido hasta el 21 de octubre

---

[10] Notificada el 18 de julio de 2024.
[11] Véase Apéndice 1 del Recurso de Apelación, págs. 1-6.
[12] Véase Apéndice 2 del Recurso de Apelación, págs. 7-12.
[13] Notificada el 27 de septiembre de 2024.

de 2024 para que expusiera su posición en cuanto a los méritos del recurso. Transcurrido en exceso dicho término, sin que el recurrido se expresara, damos por perfeccionado el recurso ante nuestra consideración y procedemos a resolver sin el beneficio de su comparecencia.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24, *et seq.*, establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[14]. La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, establece el marco de revisión judicial de estas decisiones[15]. Cónsono con lo anterior, nuestra función revisora se delimita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[16].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[17]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[18]. Hay que señalar que las determinaciones

---

[14] Art. 4006(c), 4 LPRA sec. 24(y)(c).

[15] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[16] *Cruz Rivera v. Mun. de Guaynabo*, 205 DPR 606 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[17] *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012).

[18] *López Borges v. Adm. Corrección*, 185 DPR 603 (2012); *Federation des Ind. v. Ebel*, 172 DPR 615, 648 (2007).

de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[19].

Establecido lo anterior, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de forma arbitraria, caprichosa o ilegal[20]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[21]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[22].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[23].

Así pues, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[24]. De no identificarse y demostrarse

---

[19] *López Borges v. Adm. Corrección, supra.*
[20] *Vélez v. A.R.P.E.*, 167 DPR 684 (2006).
[21] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592 (2006).
[22] *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012). *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018).
[23] *IFCO Recyclint v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).
[24] *Íd.*; *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011); *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692, 717 (2010); *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[25].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[26].

**-B-**

El Departamento de Asuntos del Consumidor (DACo) fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, mejor conocida como la "Ley Orgánica del Departamento de Asuntos del Consumidor"[27]. Este fue creado con el propósito primordial de velar y establecer los derechos del consumidor y proteger los intereses de los compradores[28]. Asimismo, entre los poderes conferidos al Secretario de esa agencia están el atender, investigar y resolver las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía[29].

Con la intención de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación, el 13 de junio de 2011 se aprobó el Reglamento Núm. 8034 de Procedimientos Adjudicativos del DACO[30]. Estas reglas aplicarán a

---

[25] *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).
[26] *Rebollo v. Yiyi Motors, supra.*
[27] 3 LPRA sec. 341, *et seq.*
[28] 3 LPRA sec. 341(b).
[29] 3 LPRA sec. 341e(c).
[30] Regla 1 del Reglamento Núm. 8034.

las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores, o por el Departamento[31].

Cónsono con lo anterior, el Artículo 65 de la Ley Núm. 129-2020, mejor conocida como la "Ley de Condominios de Puerto Rico" dispone que, "[e]n el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador"[32].

**-C-**

El principio de justiciabilidad requiere que los tribunales limiten su intervención para resolver controversias reales y definidas que afecten las relaciones jurídicas de partes antagónicas u opuestas[33]. Conforme a este principio, los tribunales sólo deben evaluar controversias que sean justiciables, es decir, no deben atender controversias hipotéticas, abstractas o ficticias[34].

Siendo esto así, nuestro ordenamiento jurídico reconoce la doctrina de academicidad, la cual es una manifestación del principio de justiciabilidad, pues, aunque se cumplan todos los criterios para que el caso se considere justiciable, si ocurren cambios en los hechos o el derecho durante el trámite judicial que conviertan en ficticia o académica su solución, los tribunales deben abstenerse en intervenir[35]. El propósito de la doctrina de academicidad "es evitar el uso inadecuado de los recursos judiciales y obviar precedentes innecesarios"[36].

Un caso es académico "cuando la cuestión en controversia pierde eficacia ante el paso del tiempo, ya sea porque ocurrieron

---

[31] Regla 3 del Reglamento Núm. 8034.

[32] 31 LPRA sec. 1923j.

[33] *Pueblo v. Díaz, Rivera,* 204 DPR 472, 481 (2020); *U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 280 (2010).

[34] *Moreno v. Pres. U.P.R. II,* 178 DPR 969, 973 (2010).

[35] *Torres Santiago v. Depto. Justicia, supra,* pág. 982.

[36] *Moreno v. Pres. U.P.R II, supra,* págs. 973-974.

cambios en los hechos o en el derecho, y la misma se vuelve inexistente"[37]. En otras palabras, un caso es académico cuando se intenta obtener: (1) un fallo sobre una controversia disfrazada o que no existe; o (2) una determinación sobre un derecho antes de que lo hayan reclamado; o (3) o una sentencia sobre un asunto que, al emitirse no podrá tener efectos prácticos sobre una controversia existente[38].

El Tribunal Supremo de Puerto Rico ha reconocido ciertas excepciones en la aplicación del principio de academicidad, esto es: "(1) cuando se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes"[39]. Así, al evaluar la doctrina de academicidad y la aplicación de sus excepciones, los Tribunales debemos tomar en consideración "los eventos anteriores, próximos y futuros, y así determinar si la controversia entre las partes sigue viva y subsiste con el tiempo"[40].

En particular, en cuanto a la excepción de recurrencia, la misma aplica si concurren tres elementos:

> Primero, la probabilidad de la recurrencia. En segundo lugar, la identidad de las partes involucradas, y por último, la probabilidad de que el asunto sea capaz de evadir la revisión judicial. […].

> El primero de los requisitos a la excepción de recurrencia "requiere que exista una 'probabilidad razonable' de que la controversia pueda repetirse". […].

> El segundo requisito de identidad de las partes "tiene el fin de fomentar la abstención judicial en situaciones en que los litigantes pudieron haber perdido el incentivo para continuar litigando vigorosamente el caso. […].

---

[37] *Pueblo v. Diaz, Rivera, supra.*
[38] *Torres Santiago v. Depto. Justicia,* supra, pág. 982.
[39] *Pueblo v. Diaz, Rivera, supra.*
[40] *Torres Santiago v. Depto. Justicia, supra,* págs. 982-983; *Pres. del Senado,* 148 DPR 737, 759 (1999).

El tercero y último requisito, "requiere que el daño sea inherentemente de tan corta duración que sea probable que la controversia siempre se torne académica antes de que la litigación se complete"[41].

Cabe destacar que estas excepciones, "tienen que usarse con mesura, pues no pueden obviar los límites constitucionales que inspiran la doctrina de academicidad"[42]. De no ser de aplicación las citadas excepciones a la doctrina de academicidad, el tribunal tiene el deber de desestimar el pleito, ya que no tiene discreción para negarse a hacerlo[43].

**III.**

En el recurso presentado por la señora Carmona Rivera, se adujo que erró el DACo al desestimar la *Querella*. Según la recurrente, la *Querella* fue declarada académica de manera incorrecta tras la renuncia de Total Administration Inc., sin que se tomaran en cuenta las excepciones aplicables a la doctrina de academicidad. Además, arguyó que el DACo no atendió ni evaluó las alegaciones contra la Junta y el Consejo de Titulares, ya que, ratificaron un contrato de administración con Total Administration Inc., pese a que la licencia estaba vencida.

El 14 de julio de 2024[44], el DACo emitió una *Resolución Sumaria*, donde ordenó el cierre y archivo de la *Querella* presentada por la señora Carmona Rivera. En ésta, el DACo aplicó la doctrina de la academicidad, pues la compañía Total Administration Inc. había cesado de brindar servicios al Condominio La Arboleda.

Por lo anterior, concluimos que, ante el cese de los servicios de Total Administration Inc., actuó correctamente el DACo al desestimar la *Querella* por academicidad; toda vez que no existe controversia real ni justiciable dado a los cambios fácticos anteriormente expuestos. Es decir, la controversia de autos se

---

[41] *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 934 (2010).
[42] *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 933.
[43] *E.L.A. v. Aguayo,* 80 DPR 552, 552 (1968).
[44] Notificada el 18 de julio de 2024.

convirtió en académica, por lo que este foro carece de jurisdicción para considerar en sus méritos el presente recurso de revisión. Obviar lo anterior, cuando la situación planteada no tiene probabilidades de recurrencia, atentaría contra el principio de justiciabilidad y conllevaría un uso innecesario de los recursos judiciales.

De igual forma, la recurrente arguyó que se debían tomar en cuenta las excepciones de la doctrina de academicidad referente a que la controversia era susceptible de repetirse y que seguían existiendo consecuencias colaterales que continuaban afectando a los titulares del condominio. Como adelantamos anteriormente, en cuanto a la excepción de recurrencia, la misma aplica si concurren tres elementos:

> Primero, la probabilidad de la recurrencia. En segundo lugar, la identidad de las partes involucradas, y por último, la probabilidad de que el asunto sea capaz de evadir la revisión judicial. [...].

> El primero de los requisitos a la excepción de recurrencia "requiere que exista una 'probabilidad razonable' de que la controversia pueda repetirse". [...].

> El segundo requisito de identidad de las partes "tiene el fin de fomentar la abstención judicial en situaciones en que los litigantes pudieron haber perdido el incentivo para continuar litigando vigorosamente el caso. [...].

> El tercero y último requisito, "requiere que el daño sea inherentemente de tan corta duración que sea probable que la controversia siempre se torne académica antes de que la litigación se complete"[45].

Según lo expuesto, podemos concluir que no concurren los tres elementos para que la excepción de recurrencia sea válida. Esto, debido a que: (1) sería especulativo afirmar que la controversia planteada en el caso de autos tenga una probabilidad sustancial de volver a repetirse, (2) en cuanto a la identidad de las partes involucradas no tiene mérito, pues Total Administration Inc. dejó de brindar sus funciones al Condominio La Arboleda y (3) en el caso de marras la controversia planteada no era de corta duración, por lo

---

[45] *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 934.

que no hay motivos para concluir que era capaz de evadir la revisión judicial.

En cuanto a la alegación de la recurrida de que, seguían existiendo consecuencias colaterales que continuaban afectando a los titulares del condominio, resultaría inmeritorio que concluyamos que le asiste la razón. Según lo discutido, la controversia se extinguió desde el momento en que Total Administration, Inc. dejó de brindar sus servicios como compañía administradora del Condominio La Arboleda. Por lo tanto, al estar fuera del panorama Total Administration, es inmeritorio concluir que persisten consecuencias colaterales.

Referente al segundo error, la señora Carmona Rivera arguye que, DACo incide en su *Resolución* por no haber atendido las alegaciones que la Junta y el Consejo de Titulares ratificaron en el contrato de administración con Total Adminstration Inc., pese a que la licencia estaba vencida al momento de la ratificación de la extensión del contrato. Tras un minucioso examen del legajo apelativo, destacamos que la Licencia 138110 expedida por DACo para Total Administration Inc. y Mayra I. Bezares Gómez, con el fin de dedicarse al negocio de agente administrador de Condominios, tiene una vigencia desde 1 de diciembre de 2022 hasta 1 de diciembre de 2024. No surge del expediente que DACo la hubiese revocado. Por lo cual, colegimos que, el segundo error no fue cometido, por ser inadecuado en derecho.

Finalmente, cabe destacar que es norma reiterada que las decisiones emitidas por los organismos administrativos merecen nuestra deferencia. Como foro revisor, no debemos intervenir con las decisiones de las agencias administrativas a menos que se señale evidencia contenida en el expediente administrativo que derrote la presunción. En este caso, la señora Carmona Rivera no señaló ni presentó evidencia alguna que demostrara que el DACo incidió en

su determinación. Tampoco demostró que la actuación de la agencia infringiera su derecho al debido proceso de ley. En consecuencia, procede que le concedamos la deferencia debida a la decisión administrativa recurrida.

**IV.**

Por los fundamentos expuestos, **confirmamos** la determinación recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones